IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

RECEIVED
2006 FEB 23 A 9: 52

| | | |
|---|---|---|
| TIMMY TERRELL HARRIS | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| V. | * | CIVIL ACTION NO. 1:05-CV-1187-T |
| | * | |
| KENNETH LATHAM, et al., | * | |
| | * | |
| Defendants. | * | |

**ANSWER AND REPORT
OF DEFENDANT CARL W. GARROW**

COMES NOW Defendant, **Carl W. Garrow** and files herewith his *Answer and Report* to the *Complaint* heretofore filed by Plaintiff, **Timmy Terrell Harris,** by stating as follows, viz:

My name is Carl W. Garrow, I am a resident of Dale County, Alabama and I am 59 years of age. I have been a certified police officer in the State of Alabama since 1973. I have been employed by the Town of Newton in Dale County, Alabama since July 2005. Prior thereto I was a police officer in the Town of Louisville for seven consecutive years. I have always maintained my Continuing Education Units in order to retain my certification.

On September 8, 2005 at approximately 8:20 a.m. I was on routine patrol and received a radio dispatch that a passing motorist had observed a person breaking the glass doorway at Railside Auction located on Highway 231 in Newton. The dispatch advised me of the witness's statement and a possible burglary in process. At the time that I received the dispatch I was only one-half mile away from the site and arrived in approximately one minute. Upon arrival to the scene I observed a green Ford Tempo sitting near the entrance of the business. The car was actually on the State right of way outside of the business parking lot as the gate to the business was closed and locked. The vehicle was suspicious in and of itself in that it was backed into the entrance next to the gate, the engine was running and the trunk lid was open. Although the car was running there was no key in the ignition. As I exited my patrol car I observed a black male in a tan t-shirt and shorts attempting to exit the building through the broken glass in the doorway with something in his hands. He was clearly on the inside of the Railside Auction building making his way out and when he saw me he looked startled and went back into the building . I called Central Dispatch for assistance. My call was answered quickly by a Dale County Sheriff's deputy. The Deputy entered the building through the broken glass in the door as I proceeded to the rear of the building. The back door was ajar. The Deputy and I went in to secure the building and discovered that the black male I had previously observed apparently left through the back door. While securing the building a FedEx driver pulled up and advised me that he had witnessed a black male in a tan t-shirt running across all four lanes of U.S. 231 and heading into the Whispering Lakes Mobile Home Court. Whispering Lakes is basically across the four lane

Answer and Report
Carl W. Garrow
Page -2-

highway from Railside Auction. The FedEx driver stated that his reason for making the report was that he felt that the man's conduct was suspicious and he noticed the police lights flashing. By this time other law enforcement officers were on the scene to assist. Additional personnel from the Dale County Sheriff's Department, Pinckard Police Department, the Violent Crimes Task Force and the Ozark Police Department were now present. The Dale County Sheriffs Dept dispatched its helicopter for observation. Deputy Hal Cox located the suspect who was later identified as Plaintiff herein, Timmy Terrell Harris. Mr. Harris was taken into custody by the Dale County Sheriffs Department for suspicion of burglary. He was taken to the Dale County Jail.

I was not a party to the capture or arrest of Mr. Harris other than being in the search party. As I returned to the location of the automobile I discovered that the engine was still running, the trunk was still open and the gate to Railside Auction was still locked. The owner of Railside Auction, Mr. Terry Woodham, had received word of the burglary and the breaking of the door to his business and approached me very shortly after I returned to the automobile. I asked Mr. Woodham to check the trunk of the vehicle and determine if anything in the trunk appeared to be his property and taken from Railside Auction. The contents of the truck were in plain view. Mr. Woodham identified a Makata drill and a cardboard box containing various tapes and compact discs as being property taken from Railside Auction. Mr. Woodham then opened the gate and he along with Deputy Hal Cox and Deputy Wally Olson proceeded to inspect the building. I proceeded to run the tag number of the Ford Tempo and was advised by dispatch that the car had been reported stolen in the State of Georgia. Photographs were taken of the vehicle and then it was removed by the Dale County Sheriff's Department and taken to the County Impound Lot.

Mr. Harris alleges that the items determined to be owned by the Railside Auction were placed in the vehicle by "an unauthorized Sheriff's employee". This is simply not the case as these items were observed by me prior to the arrival by any other law enforcement agency. Mr. Harris further alleges that he was denied access to the photographs of the vehicle and its open trunk. I was in Dale County District Court for the preliminary hearing in this matter and Mr. Harris was given black and white photographs, which were exact reproductions of color photographs made at the scene. Mr. Harris was also allowed to view and examine the color photographs in court.

Mr. Harris also alleges that Newton Police Officer Kenneth Latham fraudulently and maliciously changed the case numbers of his charges in order to "dismiss a Frivolous Receiving Stolen Property Charge" used to detain him. The number to which Mr. Harris refers is simply a identification number for the Town of Newton's Investigative report. The Dale County District Court assigned a Case Number within the court numbering system to identify Mr. Harris and this number has not been changed.

Answer and Report
Carl W. Garrow
Page -3-

## AFFIRMATIVE DEFENSES

1. I deny any and all allegations of wrongdoing and demand strict proof thereof;

2. I plead the general issue;

3. I deny that I had violated any of the Plaintiffs Constitutional rights;

4. I deny the existence of any pattern, policy or practice which allegedly resulted in the violation of any Constitutional right of the Plaintiff;

5. The Complaint fails to state a cause of action entitling the Plaintiff to relief;

6. At all times alleged I was acting within the line and scope of my employment as a municipal police officer and the cap on monetary damages would be applicable to any award against me;

7. Any recovery is limited to $100,000.00;

8. I am immune from punitive damages;

9. I plead immunity, qualified immunity and good faith immunity;

10. I plead absolute immunity, substantive immunity, discretionary immunity and qualified immunity;

11. The award of punitive damage claims by Plaintiff violates Article I, Section 10[1] and/or the Fourth, Fifth, Sixth, Eighth and/or Fourteen Amendments to the Constitution of the United States and Article I, Section 6 and other provisions of the Constitution of Alabama on the following separate and several grounds: (a) that the civil procedures pursuant to which punitive damages are awarded may result wrongfully in a punishment by a punitive damages award after the fact; (b) that civil procedures pursuant to which punitive damages are awarded may result in the award of joint and several judgments against multiple defendants for different alleged acts or wrongdoing; (c) that the civil procedures pursuant to which punitive damages are awarded fail to provide means for awarding separate judgments against alleged joint tortfeasors; (d) that civil procedures pursuant to which punitive damages are awarded fail to provide a limit on the amount of the award against the Defendant; (e) that civil procedures pursuant to which punitive damages are awarded fail to provide specific standards for the amount of the punitive damages award; (f) that civil procedures pursuant to which punitive damages are awarded fail to provide specific standards for the award of punitive damages; (g) that civil procedures pursuant to which punitive damages are awarded permit the award of punitive damages upon satisfaction of the standard of proof less than that applicable to the imposition of

Answer and Report
Carl W. Garrow
Page -4-

       criminal sanctions; (h) that civil procedures pursuant to which punitive damages are awarded permit multiple awards of punitive damages for the same alleged act; (I) that civil procedures pursuant to which punitive damages are awarded fail to provide a clear consistent appellate standard of review of an award of punitive damages; (j) that civil procedures pursuant to which punitive damages are awarded permit the admission of evidence relative to the punitive damages in the same proceeding during which liability and compensatory damages are determined; (k) that standards of conduct upon which punitive damages are awarded are vague; (l) that civil procedures pursuant to which punitive damages are awarded would permit the imposition of excessive fines; (m) that civil procedures pursuant to which punitive damages are awarded permit the award of punitive damages upon satisfaction of a standard of proof which is not heightened in relation to the standard of proof for ordinary civil cases; (n) that civil procedures pursuant to which punitive damages are awarded permit the imposition of arbitrary, capricious or oppressive penalties; (o) that civil procedures pursuant to which punitive damages are awarded fail to limit the discretion of the jury and the award of punitive damages;

12.    I aver that the demand for punitive damages in the instant case is subject to those limitations established by the Alabama Legislature as set forth in the *Code of Alabama*, §6-11-21 (Repl. Vol. 1993).

DATED this the 17th day of February, 2006.

                                                             /s/ Carl W. Garrow
                                                             Carl W. Garrow


STATE OF ALABAMA
COUNTY OF DALE

    **Carl W. Garrow**, being duly sworn, deposes and says that the facts alleged in the above *Answer and Report* are true and correct according to the best of his knowledge, information and belief.

                                                             /s/ Carl W. Garrow
                                                             Carl W. Garrow

Answer and Report
Carl W. Garrow
Page -5-


STATE OF ALABAMA
COUNTY OF DALE

    SWORN to and SUBSCRIBED before me this the 17th day of February, 2006.

_____
Notary Public

## CERTIFICATE OF SERVICE

    I, the undersigned, hereby certify that I have forwarded a copy of the foregoing *Answer* to Mr. Timmy Terrell Harris, Plaintiff, to his correct mailing address in care of the Dale County Jail, Post Office Box 279, Ozark, Alabama 36361, via US Mail with postage prepaid this the 17th day of February, 2006.

_____
Joe W. Adams